## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                  )
PROTECT THE PUBLIC'S TRUST,       )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        Civil Action No. 21-2486 (ABJ)
                                  )
UNITED STATES                     )
DEPARTMENT OF ENERGY,             )
                                  )
                Defendant.        )
_____)
```

## <u>MEMORANDUM OPINION</u>

On May 12, 2021, plaintiff Protect the Public's Trust, an unincorporated non-profit association "concerned with maintaining integrity, ethics and responsibility in government," submitted a Freedom of Information Act ("FOIA") request to the United States Department of Energy ("DOE" or "Department"). Compl. [Dkt. # 1] ¶¶ 2, 6. It called for

> [a]ll communications to, from or pertaining to Kelley Speakes-Backman, including schedules, calendars, virtual meeting logs (e.g. Zoom, Teams, or other platform[s] used by the Department), meeting invites, public appearances, guidance or counseling provided by the DOE Ethics Office pertaining to an ethics matter of Kelly Speakes-Backman.

Letter from Protect the Public's Trust to Dep't of Energy FOIA Officer, Ex. A to Compl. [Dkt. # 1-1] ("FOIA Request") at 1. Following a delay in the processing of its request, plaintiff filed a complaint on September 23, 2021 seeking: a declaration that it is entitled to the records; an injunction ordering DOE to produce the records and confer with plaintiff regarding any withheld documents; and an injunction ordering DOE to pay reasonable attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E). Compl. ¶¶ 17–28. DOE answered the complaint on November 19, 2021, *see*

Def.'s Answer [Dkt. # 6], and this Court commenced oversight of the Department's review and production of documents on November 22, 2021. *See* Order [Dkt. # 7].

DOE produced a series of documents through initial and supplemental responses from January through July 2022. *See* Feb. 18, 2022 Status Report [Dkt. # 9] ¶ 3; Decl. of Alexander C. Morris, FOIA Officer in the DOE Office of Public Information [Dkt. # 22-3] ("Morris Decl.") ¶ 23. However, the Department also withheld, either in full or in part, a number of documents on the grounds that one or more FOIA exemptions applied: 2 pages were withheld under FOIA Exemption 4, Decl. of Susan Beard, Deputy General Counsel for General Law in the DOE Office of the General Counsel [Dkt #22-5] ("Beard Decl.") ¶ 9; 35 pages were withheld in full and 106 pages in part pursuant to FOIA Exemption 5, Beard Decl. ¶ 16; and 36 pages were withheld in full and 34 pages in part pursuant to FOIA Exemption 6, Beard Decl. ¶ 56. *See also* Def.'s *Vaughn* Index [Dkt. # 22-6] ("*Vaugh* Index").

At the conclusion of DOE's production, plaintiff took the position that DOE's "search and productions" were plagued with "several issues." Sept. 13, 2022 Status Report [Dkt. # 19] at 2. On December 9, 2022, DOE filed a motion for summary judgement, along with a statement of undisputed material facts, two sworn declarations, and a *Vaugh* index describing the withheld documents and the agency's justifications for withholding them. *See* Def.'s Mot. for Summ. J. [Dkt. # 22] ("Mot."); Def.'s Mem. of P. & A. in Supp. of Mot. for Summ. J. [Dkt. # 22-1]; Def.'s Statement of Material Facts [Dkt. # 22-2] ("SOF"); Morris Decl.; Beard Decl.; *Vaughn* Index. Plaintiff opposed the motion and filed a response to DOE's statement of facts. *See* Pl.'s Opp. to Mot. [Dkt. # 24] ("Opp."); Pl.'s Resp. to SOF [Dkt. # 24-1] ("SOF Opp."). DOE then filed a reply, as well as an updated *Vaughn* index. *See* Reply in Further Supp. of Def.'s Mot. for Summ. J. [Dkt. # 26] ("Reply"); Suppl. *Vaughn* Index, Ex. 1 to Reply [Dkt. # 26-1].

The Court has reviewed the parties' pleadings, defendant's statement of facts and plaintiff's objections thereto, defendant's declarations, and the original and supplemental *Vaughn* indices closely.  In addition, on March 28, 2024 the Court called for in camera review of a small set of disputed records, *see* Min. Order (Mar. 28, 2024), which it has reviewed.  For the following reasons the Court will **GRANT** the Department's motion.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

When the court is presented with cross-motions for summary judgment, it analyzes the underlying facts and inferences in each party's motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 247.

## ANALYSIS

The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, compels government agencies to release records upon request. *See* 5 U.S.C. § 552. The act also allows agencies to withhold the requested records if they can demonstrate that the record falls into one of nine specific exemptions. *See id.* § 552(b); *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010).

These exemptions are construed narrowly in keeping with FOIA's presumption in favor of disclosure, and the withholding agency bears the burden of showing that the claimed exemption applies. *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976); *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008). "[W]hen an agency seeks to withhold information, it must provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant.'" *Morley v. CIA.*, 508 F.3d 1108, 1122 (D.C. Cir. 2007), quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987).

When summary judgment turns upon the applicability of an exemption, the court must "ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempted from disclosure." *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citations and international quotation marks omitted). Moreover, pursuant to a 2016 amendment to the FOIA statute, an agency may withhold information pursuant to an exemption only if it "reasonably foresees that disclosure would harm an interest protected by" that exemption. 5 U.S.C. §552(a)(8)(A)(i)(I). This "reasonable foreseeability of harm"

standard requires the withholding agency to provide "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure" of the contested records. *Jud. Watch, Inc. v. U.S. Dep't of Just.*, No. CV 17-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019).

In a FOIA case, a court may grant summary judgment based on information provided in an agency's affidavits or declarations when they are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted). Federal Rule of Civil Procedure 56(c) states that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

It is well established, though, that there are circumstances when an agency declaration may properly include hearsay. The D.C. Circuit "long ago recognized the validity of the affidavit of an individual who supervised a search for records even though the affiant has not conducted the search himself" as sufficient for a declarant in a FOIA action. *Brophy v. U.S. Dep't of Def.*, No. CIV.A. 05-360(RMC), 2006 WL 571901, at *4 (D.D.C. Mar. 8, 2006), citing *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir. 1986); *see also Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019) (acknowledging that hearsay is permissible in justifying the adequacy of the search); *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) ("Consistent with these requirements, hearsay in FOIA [search] declarations is often permissible.").

But courts have not always found hearsay to be sufficient when it is offered to justify withholding records based on an exemption. *See Londrigan v. FBI*, 670 F.2d 1164, 1174–75

(D.C. Cir. 1981) (district court's grant of summary judgment reversed due to the affiant's lack of personal knowledge of the facts underlying the exemption and his reliance on hearsay); *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 224 F.R.D. 261, 264–65 (D.D.C. 2004) (court struck portions of the agency FOIA Director's declaration due to a lack of personal knowledge and impermissible hearsay. As the court observed in *Humane Society*, "ultimately, it is the Court, not the agency, that must be satisfied with the propriety of a claimed FOIA exemption." *Humane Soc'y of U.S.*, 386 F. Supp. 3d at 44.

It is essential that agency affidavits be accurate. "[S]ummary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks omitted), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006). As the D.C. Circuit has emphasized, this Court should be able to depend on the accuracy of the submissions that are intended "to permit adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citations omitted); *see Schiller v. NLRB,* 964 F.2d 1205, 1209 (D.C. Cir. 1992) ("FOIA litigation is not immune from our open, adversary process . . . . We expect agencies to ensure that their submissions in FOIA cases are absolutely accurate."), *abrogated on other grounds by Milner v. Dep't of Navy*, 562 U.S. 562 (2011); *see also Cause of Action Inst. v. Exp.-Imp. Bank of the U.S.*, 521 F. Supp. 3d 64, 90 (D.D.C. Feb. 23, 2021) (ordering disclosure of records when "[e]ven the briefest *in camera* review reveals that [defendant's] description is plainly overbroad and . . . seemingly inaccurate, as their content has nothing to do with" the claimed exemption).

When considering a motion for summary judgment under FOIA, the court must conduct a *de novo* review of the record.  *See* 5 U.S.C. § 552(a)(4)(B).

## I.    The agency's search was adequate.

Plaintiff has not raised any issues in its opposition with respect to the adequacy of the agency's search, and defendant has satisfied its burden to come forward with evidence establishing that adequate searches were conducted by submitting the declaration of Alexander C. Morris, FOIA Officer in the Office of Public Information for Department of Energy Headquarters.  *See* Morris Decl.  Morris sets forth facts sufficient to enable the Court to conclude that the agency made the necessary good faith effort, and that it was reasonable to expect that the methods utilized appropriately canvassed Department records for plaintiff's requested information. Plaintiff has not in any way refuted defendants' declarations.  Accordingly, the Court concludes that the agency has satisfied its FOIA obligations with respect to the adequacy of its search.

## II.    The withholding of documents was justified under FOIA Exemption 5.

Defendant withheld a number of responsive records in this case pursuant to FOIA Exemption 5, which bars disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  A document may be properly withheld under Exemption 5 if it satisfies "two conditions: its source must be a [g]overnment agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also Formaldehyde Inst. v. Dep't of Health & Hum. Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989), quoting *Tax'n With Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981) (Exemption 5 encompasses "the protections traditionally afforded certain documents pursuant to

evidentiary privileges in the civil discovery context," including "the executive 'deliberative process privilege.'").

Here, the agency invoked the attorney work product privilege, the attorney-client privilege, and the deliberative process privilege.  Mot. at 10.  All have been found to be incorporated in Exemption 5.  *Loving,* 550 F.3d at 37.

A.    **The Attorney Work Product Privilege**

The  attorney work product privilege "protects written materials lawyers prepare 'in anticipation of litigation,'" *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998), quoting Fed. R. Civ. P. 26(b)(3), to include "factual materials prepared in anticipation of litigation," "opinions, legal theories, and the like." *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997). Thus, it affords "a working attorney . . . a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980).

Defendant has invoked FOIA Exemption 5 and the attorney work product privilege with respect to six documents.[1]  The withheld records are each described as a communication "among attorneys within the Office of the General Counsel [that] discusses litigation strategy as it relates to a matter currently being litigated," which defendant identifies as *Sierra Club v. Department of Energy*, No. 20-cv-382 (D. Me.).  Suppl. *Vaugh* Index.  According to the Department's declarant, these communications included "weekly updates on the status of matters in litigation and internal discussion related to the litigation," and they were "provided in order to aid the attorney[s] in

---

1    Bates Nos. 000197-98, 000218-19, 000227-28, 000230-31, 000247-48, 000262-63. Defendant also invokes the deliberative process privilege with respect to each of these documents. Suppl. *Vaugh* Index.

responding to other matters that related to the subject of the litigation."  Beard Decl. ¶ 41.  And the documents included "attorneys' legal strategies, reasoning and analysis related to the case and were intended to information discussion of related matters."  *Id.* ¶ 42.

In its opposition, plaintiff found this justification inadequate for two reasons: that "neither the *Vaughn* Index nor the declarations identif[ied] what litigation" the privilege was asserted to protect, and that "DOE [ ] failed entirely to address whether the client has acted in a manner consistent with maintaining the privilege or consistent with defeating it."  Opp. at 10.  Both of these concerns have been rendered moot by defendant's supplemental submissions.  The agency identified the litigation to which the documents relate – even though it was not required to do so, *see Jud. Watch, Inc. v. U.S. Dep't of Hous. and Urb. Dev.*, 20 F. Supp. 3d 247, 258 (D.D.C. 2014) – and the Department's FOIA Officer attests that "[a]ttorney work-product was maintained by the Agency at all times" and information was "never shared outside of the Agency" and "only communicated to agency employees."  Suppl. Decl. of Alexander C. Morris, Ex. 3 to Reply [Dkt. # 26-3] ("Suppl. Morris Decl.") ¶ 11.

Moreover, it is *plaintiff*, not the agency, that bears the burden of proving waiver.  *See Ashfar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983) ("[A] plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.").   Yet plaintiff has offered no basis to discredit the Department's representations, and Mr. Morris's supplemental declaration must be accorded the "presumption of good faith" that attaches to agency declarations in FOIA actions.  *SafeCard Servs., Inc. v. SEC* 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Therefore, the Court finds the emails to be attorney work product and protected from disclosure under Exemption 5.  This ends the matter

because "if a document is fully protected as work product, segregability is not required." *Jud. Watch, Inc. v. Dep't of Just.*, 432 F.3d 366, 371 (D.C. Cir. 2005).

B.      **The Attorney-Client Privilege**

Although Exemption 5 "does not itself create a government attorney-client privilege," the privilege

> has a proper role to play in exemption five cases. . . . In order to ensure that a client receives the best possible legal advice, based on a full and frank discussion with his attorney, the attorney-client privilege assures him that confidential communications to his attorney will not be disclosed without his consent.  [There is] no reason why this same protection should not be extended to an agency's communications with its attorneys under exemption five.

*In re Lindsey*, 158 F.3d 1263, 1269 (D.C. Cir. 1998), quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,* 566 F.2d 242, 252 (D.C. Cir. 1977).

The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services, and it "is not limited to communications made in the context of litigation or even a specific dispute." *Coastal States*, 617 F.2d at 862.  The privilege also protects communications from attorneys to their clients that "rest on confidential information obtained from the client" *Tax Analysts*, 117 F.3d at 618, quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984).  In the FOIA context, the agency is often the "client," and agency lawyers are the "attorneys" for purposes of the attorney-client privilege.  *See In re Lindsey*, 158 F.3d at 1269, citing *Coastal States*, 617 F.2d at 863

Defendant has invoked the attorney-client privilege with respect to 26 documents.[2]   These documents can be separated into roughly three categories: "emails involv[ing] the communication of legal conclusions and recommendations to the client from the attorney related to a letter received from Protect the Public's Trust"; emails containing "attorney advice on [ ] ethical question[s] raised" regarding potential speaking engagements, meetings, events, and Speakes-Backman's service as a reference for a former colleague; communications concerning ethics questions related to the financial contributions, conflicts of interest, and financial disclosures of Speakes-Backman and her spouse.  Suppl. *Vaugh* Index.  Another document contains "a question from a junior attorney to a senior attorney about how best to proceed" in a matter involving Speakes-Backman. *Id.*

Plaintiff objects to the Department's assertion of the attorney-client privilege insofar as "DOE cannot simultaneously claim that its in-house attorneys represent the DOE and represent employees of DOE against whom DOE must enforce ethical obligations and regulations."[3]   Opp. at 10.  According to plaintiff, "[t]he client of DOE in-house attorneys is necessarily the Department itself; DOE represents its own employees only insofar as the employees are acting on behalf of the government. An employee acting under a conflict of interest is inherently not working on behalf

---

2       Bates Nos. 000006-7, 000008-22, 000035-36, 000037, 000048, 000049-51, 000052-55, 000062, 000063-64, 000107-12, 000113-35, 000137, 000138, 000144, 000162-66, 000171, 000175-77, 000274-76, 000289, 000290-94, 000298-301, 000303, 000322-24, 000326-27, 000331-38, 000359. Defendant additionally invokes the deliberative process privilege with respect to each of these documents. Suppl. *Vaugh* Index.

3       Plaintiff does not appear to object to the redaction of information related to the agency's response to plaintiff's FOIA request.  *See* Opp.  The Court will accordingly treat defendant's withholding of information in those documents as concededly appropriate.

of the government, and an employee seeking advice related to interests personal to the employee is not seeking advice on behalf of the Department." *Id.* at 13.

Plaintiff's argument appears to put the cart before the horse. Plaintiff simply posits that Speakes-Backman is working under a conflict of interest and that, therefore, her interests cannot be aligned with the agency's for purposes of the attorney-client privilege. There is no evidence in the record that supports this assumption, and the Court cannot base its ruling on speculation. Defendant's supplemental *Vaughn* index and the sworn declaration from DOE Deputy General Counsel Susan Beard make clear that the requested documents detail communications related to Ethics in Government Act compliance, specifically legal advice from agency attorneys to Speakes-Backman regarding her completion of the Office of Government Ethics ("OGE") Form 278e Financial Disclosure Report. *See* Beard Decl. ¶¶ 22–26. As Ms. Beard attests, these communications are part of the process the agency has put in place to comply with the Ethics in Government Act, and it can include multiple rounds of interviews and frank personal discussions all designed to not just "identify" but also "avoid potential conflicts of interest." *Id.* ¶ 26.

While the communications undoubtedly involve personal information related to Speakes-Backman and her family, that does not mean that the attorneys' work in advising her about her ethical obligations falls outside of the agency lawyers' attorney-client privilege. The agency official was not the client. The lawyers were not retained by Speakes-Backman, and she is not the one asserting the privilege. The agency's declaration explains how ensuring employees' compliance with disclosure obligations enables agency lawyers to fulfill their duty to the agency to monitor and avoid potential conflicts of interest on the part of high-ranking officials. The advice was rendered to Speakes-Backman in her official capacity as an agency official, and in that

capacity, she was entitled to their full and frank advice, just as she would have been if they were providing advice about a program or initiative she was considering.

In the absence of any contrary evidence or showing of bad faith, the Court is bound to accept the agency's declaration. The Court therefore finds that documents and communications between Speakes-Backman and agency attorneys during the conflicts screening process were appropriately withheld under FOIA Exemption 5.

### C.      The Deliberative Process Privilege

The deliberative process privilege "allows the government to withhold documents and other materials that would reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case (Espy),* 121 F.3d 729, 736–37 (D.C. Cir. 1997) (citations and internal quotation marks omitted). The Supreme Court explained that it "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9, quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).

To accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative." *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (internal quotation marks omitted), citing *Coastal States*, 617 F.2d at 866. "[A] document is predecisional if it was generated before the adoption of an agency policy and deliberative if 'it reflects the give-and-take of the consultative process.'" *Judicial Watch, Inc.*, 449 F.3d at 151, quoting *Coastal States*, 617 F.2d at 866. In other words, a "'predecisional' document is one 'prepared in order to assist an agency decisionmaker in arriving at his decision.'"

*Formaldehyde Inst.*, 889 F.2d at 1122, quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).

> The agency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process. . . .  [I]f documents are not a part of a clear "process" leading to a final decision on the issue . . . they are less likely to be properly characterized as predecisional[.]

*Coastal States*, 617 F.2d at 868, citing *Vaughn v. Rosen*, 523 F.2d 1136, 1146 (D.C. Cir. 1975).[4]

Chronology is not the beginning and end of the inquiry, though; in *Judicial Watch, Inc. v. FDA*, the Court of Appeals recognized that "documents dated after [the decision at issue] may still be predecisional and deliberative with respect to other, nonfinal agency policies[.] . . .  A contrary rule would undermine the privilege's purpose to encourage 'honest and frank communication within the agency' without fear of public disclosure."  449 F.3d at 151–52, quoting *Coastal States,* 617 F.2d at 866; *see also Mead Data Cent., Inc.,* 566 F.2d at 256 ("[T]he quality of administrative decision-making would be seriously undermined if agencies were forced to 'operate in a fishbowl' because the full and frank exchange of ideas on legal or policy matters would be impossible.").  But the opinion emphasized that the agency must supply sufficient information to enable a court to determine whether a communication after a policy was decided was in furtherance of a subsequent agency action:  "It may be that reflections on an already-decided policy are neither predecisional nor indicative of the deliberative process of the government.  After all, 'Exemption five is intended to protect the deliberative process of government and not just deliberative material.'"  *Jud. Watch, Inc.*, 449 F.3d at 151, quoting *Mead Data Cent., Inc.*, 566

---

4       *See also Coastal States*, 617 F.2d at 868 ("Characterizing [] documents as 'predecisional' simply because they play into an ongoing audit process would be a serious warping of the meaning of the word.  No 'decision' is being made or 'policy' being considered[.] . . .").

F.2d at 256.  In sum, one can only decide whether a document generated after an agency decision has been made is deliberative with respect to another decision on a case-by-case basis.

With respect to the "deliberative" prong of the test – the second prong – "the exemption protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982), citing *Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63, 66 (D.C. Cir. 1974).  But the agency "cannot simply rely on 'generalized' assertions that disclosure 'could' chill deliberations."  *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (citation omitted).

As the D.C. Circuit explained in the *Espy* case:

> Both requirements stem from the privilege's "ultimate purpose[, which] . . . is to prevent injury to the quality of agency decisions" by allowing government officials freedom to debate alternative approaches in private. The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.

*Espy*, 121 F.3d at 737 (citations omitted).

In addition to those documents for which defendant has invoked Exemption 5 on other grounds,[5] defendant invoked the deliberative process privilege with respect to 28 documents.[6]  The documents contain the following information:

- Communications between attorneys within the Office of the General Counsel and others discussing Department's response to a letter from Congress, culminating in a September 13, 2021 letter from Deputy General counsel Eric Fygi to the Committee on Oversight and Government Reform's Subcommittee on Environment.  *See* Suppl. *Vaughn* Index at 1, 9, 10, 29–31 (Bates Nos. 000001-5, 000066-67, 000074, 000079-84, 85, 000086-90, 000239-40, 000241, 000242-46;

- Communications between attorneys with the Office of the General Counsel regarding "matters requiring legal attention and action," undertaken in furtherance of the Department's September 13, 2021 letter from Deputy General counsel Eric Fygi to the Committee on Oversight and Government Reform's Subcommittee on Environment.  *See* Suppl. *Vaughn* Index at 9, 22, 23–24, 25, 26, 27 (Bates Nos. 000068-73, 000180-81, 000185-86, 000190-91, 000192-93, 000203-05, 000213-14, 000224-26);

- Communications between DOE employees regarding potential speaking engagements, including agency-related announcements an employee might make at those speaking engagements.  *See* Suppl. *Vaugh* Index at 12, 13, 18–19 (Bates Nos. 000096-97, 000102-03, 000146-48, 000149-50, 000151-57);

- Communications regarding "program direction and a conflict of interest."  *See* Suppl. *Vaugh* Index at 15 (Bates No. 000136);

- Communications discussing "legal advice received regarding a letter from Rep. Ralph Norman."  *See* Suppl. *Vaughn* Index at 32–33 (Bates Nos. 000252-53);

- Communications between the General Counsel and National Security Council related to the September 13, 2021 letter from Deputy General counsel Eric Fygi to

---

5       *Supra* nn. 1, 2.

6       Bates Nos. 000001-5, 000066-67, 000068-73, 000074, 000079-84, 000085, 000086-90, 000096-97, 000102-03, 000136, 000146-48, 000149-50, 000151-57, 000180-81, 000185-86, 000190-91, 000192-93, 000203-05, 000213-14, 000224-26, 000239-40, 000241, 000242-46, 000252-53, 000265, 000271-73, 00095-96, and 000307.  Defendant also invokes Exemption 4 with respect to Bates Nos. 000271-73 and Exemption 6 with respect to Bates Nos. 000146-48, 000151-57, 000252-53, 000271-73, and 000295-96 within this group.

the Committee on Oversight and Government Reform's Subcommittee on Environment.  *See* Suppl. *Vaughn* Index at 33–34 (Bates No. 000265);

- Communications about "a news article and whether action is required" in response to the article, detailing "analysis and advice" on the matter.  Suppl. *Vaughn* Index at 34–35 (Bates Nos. 000271-73);[7]

- Communications concerning Ms. Speakes-Backman and other DOE employees regarding ethics reporting, including "the status and [*sic*] outstanding matters related to ethics inquiries regarding" the employees.  Suppl. *Vaughn* Index at 38 (Bates Nos. 000295-96); and

- A communication regarding the agency's response to plaintiff's letter concerning its FOIA request.  *See* Suppl. *Vaugnh* Index at 41 (Bates No. 000307).

According to the agency, the records "are pre-decisional communications circulated during the back-and forth, internal analysis and recommendation process within the agency that assisted Speakes-Backman with filing her Financial Disclosure Report and responding to engagement requests from third parties, as well as assisted DOE in responding to letters from outside parties." Beard Decl. ¶ 20.

Plaintiff contested the invocation of the deliberative process privilege with respect to these documents.  It argued in its Opposition:

> DOE has not shown (and cannot show) that the deliberative process privilege applies to every word or every withholding at issue. DOE has not pointed to any agency "decision" that was being contemplated or that was thereafter made, and it appears that in some cases no "superior and subordinate" relationship can possibly have existed, or that to the extent such a relationship may have existed, the nature of the communications at issue were in the nature of instructions rather than discussion.

Opp. at 8.

---

7       Defendant also invokes Exemption 4 with respect to this document, arguing that it amounts to confidential commercial information given its publication in a manner "not publicly accessible" because it "required a subscription."  Suppl. *Vaughn* Index at 34.

As an initial matter, the Court notes that many of factors listed lack the significance plaintiff accords them.  Agencies need not identify a formal or final agency decision in order to properly invoke the deliberative process privilege, *see Sears,* 421 U.S. at 151 n.18.  Nor must a document necessarily flow from a subordinate to a superior to gain protection from disclosure; courts instead "look[] beneath formal lines of authority to the reality of the decisionmaking process in question" to determine whether Exemption 5 applies.  *Schlefer v. U.S.*, 702 F.2d 233, 238 (D.C. Cir. 1983).  Also, it is not particularly problematical that the agency's *Vaughn* indices "contain[] verbatim or boilerplate entries relating to the purported deliberations at issue."  Opp. at 8.  As the D.C. Circuit has recognized, "[t]here are only so many ways the [agency] could have claimed Exemptions," and that "[a]s long as it links the statutory language to the withheld documents, the agency may even 'parrot [ ]' the language of the statute."  *Jud. Watch, Inc.*, 449 F.3d at 147, quoting *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001).

Defendant has nevertheless supplemented its *Vaugh* index to incorporate additional pieces of information that plaintiff faults the agency for not incorporating initially, and the Court is satisfied that the documents within each of the categories described above were properly withheld or redacted pursuant to Exemption 5.  For each document, defendant identifies the relevant actors, the dates on which the documents were generated, and a final decision to which the documents relate, if any.  And these decisions are the type of agency judgments that the deliberative process privilege may protect: how best to respond to inquiries from Congress, *see Brennan Ctr. for Just. at New York Univ. Sch. of L. v. U.S. Dep't of Just.*, 613 F. Supp. 3d 387, 400 (D.D.C. 2020); decisions concerning where officials will speak and what they will say – with the agency's imprimatur – to advance the agency's goals, *see ICM Registry, LLC v. U.S. Dep't of Com.*, 538 F. Supp. 2d 130, 136 (D.D.C. 2008) ("[D]eliberations regarding public relations policy are

18

deliberations about policy, even if they involve 'massaging' the agency's public image.'"); and how to navigate ethics requirements while at the same time pursuing the agency's programmatic interests.  *See Jud. Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 114 (D.D.C. 2018) (holding that letter detailing "ethics undertakings" of executive branch nominee was "deliberative because it served as 'a direct part' of the collaborative process of assessing how a prospective agency head should manage potential conflicts of interest").  Because permitting plaintiff to obtain this information would chill these activities in the future and cause foreseeable harm to the agency, the Court finds that documents and communications were appropriately withheld under FOIA Exemption 5.

## III.    The withholding of documents was justified under FOIA Exemption 6.

Exemption 6 allows agencies to withhold "personnel and medical files and similar files" when disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of Exemption 6 is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982). "The Supreme Court has made clear that Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature."  *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989).

To determine whether disclosure would constitute a clearly unwarranted invasion of personal privacy, courts employ a two-step test.  First, a court should ask "whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest?"  *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (citation and internal quotation marks omitted), quoting *Horner*, 879 F.2d at 874.  If so, the court must next "weigh that interest against

the public interest in the release of the records in order to determine whether, on balance, disclosure would [cause] a clearly unwarranted invasion of personal privacy." *Id.* (internal quotation marks omitted). "[T]he only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 674 (D.C. Cir. 2016) (internal quotation marks omitted), quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994).

Defendant invokes Exemption 6 alone with respect to seven documents.[8]  According to the government's supplemental *Vaughn* Index, the information contained in the requested documents includes: "an employee's time off schedule," Suppl. *Vaughn* Index at 34 (Bates No. 000269); personal phone numbers and Venmo account information, *id.* at 36, 43–44 (Bates Nos. 000280, 000282, 000328, 000345); and two documents that each contain "a statement regarding a non-public conflict of interest clearance related to the appointment process." *Id.* at 40–41 (Bates Nos. 000304, 000306).  In its opposition, plaintiff does not appear to take issue with redactions related to employee schedules, phone numbers, or Venmo account information, but it questions the redaction of information related to conflicts of interest. *See* Opp. at 13–15.  Plaintiff hinges its arguments on an opinion from another court in this district, *Citizens for Responsibility & Ethics v. United States Postal Service.*, 557 F. Supp. 3d 145 (D.D.C. 2021) ("*CREW*").

---

8       Bates Nos. 000269, 000280, 000282, 000304, 000306, 000328, and 000345.

In *CREW*, the plaintiff sought information related to then-Postmaster General Louis DeJoy's financial holdings and conflict-of-interest obligations as they related to his role within the government. *Id.* 149–50. The United States Postal Service ("USPS") sought to shield records in its possession by invoking FOIA Exemption 6, and it argued that the withheld "documents contain[ed] financial information about the Postmaster General, which is clearly a type of personal information in which he has a privacy interest." *Id.* at 158 (citation and internal quotation marks omitted). The Court rejected the agency's reliance on Exemption 6, finding first that the information was no longer private since <u>all</u> DeJoy's financial information was already available through public filings with the Office of Government Ethics. *Id.* The Court then found that various reports on and investigations of DeJoy's alleged conflicts warranted permitting "the public to decide for itself whether government action" on DeJoy's watch "was proper." *Id.* at 158–59.

*CREW* is not on all fours with the present case. According to the government's declarant, the withheld information concerning Speakes-Backman "involves non-public personal and private information, that has nothing to do with her normal work duties." Beard Decl. ¶ 58. Moreover, the agency avers that "[p]roviding this information would reveal little to nothing about the Agency's conduct," and release would "readily implicate[] an individual's privacy interest in controlling information concerning her person which is not freely available." *Id.*

The Court has reviewed the materials *in camera* to assess the first question in the analysis: whether the privacy interest involved in documents 000304 and 000306 is substantial or *de minimis.* As described in the government's *Vaughn* index, the information contained in the documents relates to the conflicts of interest clearance process for appointments. Although an individual's privacy interest in keeping the information contained in the emails away from the

public eye is not necessarily substantial, neither is it *de minimis*, and it must be weighted against the public interest in disclosure, which in this circumstance, is minimal.

The Supreme Court has emphasized that the "purpose [of FOIA] . . . is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press,* 489 U.S. 749, 773 (1989) (holding that disclosure of the contents of an individual's rap sheet "would not shed any light on the conduct of any [g]overnment agency or official"). Although the government came into the possession of personal information about Speakes-Backman while she was fulfilling a governmental role, it cannot be said that the public has an interest in information unrelated to that role. Because, after reviewing the materials in camera, the Court finds that the redacted personal information would do nothing to assist the public in assessing what the agency "was up to," or how the agency – or this official acting on its behalf – were carrying out their duties, redaction of the information was proper. *See Lepelletier v. FDIC,* 164 F.3d 37, 46 (D.C. Cir. 1999) (citation and internal quotations mark omitted).

## IV.   Segregability

"Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (collecting cases). An agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Mead Data Cent.*, 566 F.2d at 260; *see also Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002). "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to

provide so much detail that the exempt material would effectively be disclosed." *Johnson*, 310 F.3d at 776, citing *Mead Data Cent., Inc.*, 566 F.2d at 261.

Just as with the exemption analysis, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman*, 494 F.3d at 1117, citing *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007), and "[a] court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. U.S. Dep't of Just.*, 518 F.3d 54, 61 (D.C. Cir. 2008), citing *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). A district court must make an express finding on segregability. *Juarez*, 518 F.3d at 60, citing *Morley*, 508 F.3d at 1123.

The Department has provided a comprehensive, 45-page supplemental *Vaughn* index, which describes each document withheld and the exemption under which it was withheld. *See generally* Suppl. *Vaughn* index. In addition, the Department's declarants aver that the agency "conducted a document-by-document and line-by-line review of each [responsive] document such that every effort was made to provide Plaintiff with all reasonably segregable, non-exempt records," and that "[n]o reasonably segregable, non-exempt portions of responsive records have been withheld." Morris. Decl. ¶ 26; *see also* Beard Decl. ¶¶ 63–64 ("I conducted a detailed, line-by-line review of the responsive records in order to satisfy the Agency's reasonable segregability obligations. As to the pages withheld under Exemptions 5 and 6, I determined that additional information could be segregated and released. Additional information was released to Plaintiff on December 1, 2022.").

Plaintiff argues that the agency failed to meet its segregability obligations because certain documents, such as Bates Nos. 000035–36, 000049–51, 000086–90, 000113–35, 000136, and 000137, were withheld in full.  Opp. at 16.  According to plaintiff,

> This Court can take judicial notice that email chains inherently contain purely factual information, the most obvious being the date the email was sent. Further, factual information in the email or email chain is often necessary in order to assess the existence of the purported privilege. For example, because an email inherently contains a sender and a recipient, disclosure of the identity of those individuals allows a requester to assess whether one of the individuals is a client and another is an attorney. Similarly, the subject line of an email enables a requester (and this Court) to assess whether an email was regarding legal advice, or was instead related to policy or even to quotidian and mundane topics such as an IT issue or a broken coffee machine.

*Id.*

Defendant contests this assertion.  According to the agency, "Bates Nos. 35–36, 86–90, 113–135, 136, and 137 were withheld in part, not full.  The only information withheld in full in Bates Nos. 49–51 is a financial institution statement detailing investments, account activity and account information."  Reply at 13 (citing Suppl. *Vaughn* Index).  The agency additionally states that it did not redact information such as "the sender, recipient, and subject fields" of emails "except for a limited number of records in which the information that followed the header field was redacted and marked as subject to Exemption 5 and/or 6."  *Id.* at 14; *see also* Suppl. Morris Decl. ¶ 12 (describing the agency's segregability review for email metadata headers). The Court called for the submission of these documents for *in camera* review given this dispute, and it has confirmed that the agency's characterization is correct.

Considering all of the segregation determinations in combination with defendant's declaration, the Court is satisfied that the agency has met its segregability requirement. *See Juarez*, 518 F.3d at 61 (finding a "page-by-page" review and averments in a declaration that each piece of information withheld could not be reasonably segregated to be sufficient for defendant to meet

segregability requirement); *Johnson*, 310 F.3d at 776 (concluding that a "comprehensive *Vaughn* index, describing each document withheld, as well as the exemption under which it was withheld," supplemented by an affidavit indicating that an agency official conducted a review of each document and determined that the documents did not contain segregable information was sufficient to fulfill the agency's obligation). Further, the Court's *in camera* review of the provided documents confirms this conclusion. The Court will therefore grant defendant's motion for summary judgment on the issue of segregability.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment [Dkt. # 22] will be **GRANTED.** A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 30, 2024